NO. 07-03-0308-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 29, 2004

_____

IN THE INTEREST OF J.W.M., JR. AND L.P.M., CHILDREN

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,871; HONORABLE ANDY KUPPER, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Daphne Mayo, the biological mother of minor twins J.W.M., Jr. and L.P.M., appeals the judgment, entered after a non-jury trial, terminating her parental relationship with her children. Four issues are presented to us. We affirm the judgment.

In her first issue, appellant contends the trial court committed reversible error when it rendered an order of termination beyond the time allowed by Texas Family Code Section 263.401.[1] The Family Code limits the length of time a suit affecting the parent-child

_____

[1]Unless otherwise indicated, all references to Sections are to the Texas Family Code.

relationship, in which the Department of Family and Protective Services is named temporary managing conservator of children, can remain on a court's docket. Unless the court has rendered a final order, or granted an extension, the suit must be dismissed on the first Monday following the first anniversary of the date the court rendered the order naming the Department as temporary managing conservator. Tex. Fam. Code Ann. § 263.401(a) (Vernon 2002).

The court may maintain the suit on its docket and grant an extension of 180 days if the court finds that it is in the best interest of the child to continue the appointment of the Department as temporary managing conservator. Tex. Fam. Code Ann. § 263.401(b). The court is required to dismiss the suit when the additional 180 days has expired, if it has not rendered a final order or dismissed the suit prior to that date. Tex. Fam. Code Ann. § 263.401(c). The court may not grant an additional extension that extends the suit beyond the required dismissal date. Tex. Fam. Code Ann. § 263.401(c). The time restraints imposed by Section 263.401 are mandatory and not subject to modification by agreement. Tex. Fam. Code Ann. § 263.402.

The Family Code provides an exception if the court renders a temporary order returning the child to a parent, under the Department's supervision. Tex. Fam. Code Ann. § 263.403. This is referred to as a "monitored return" of the child. When this occurs, the court sets a new dismissal date no more than 180 days from the date of the order returning the child to the parent. If, however, the Department removes the child from the parent before the new dismissal date, the dismissal date is reset to 180 days from the date of the removal. Section 263.403(a) reads:

(a)  Notwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order as required by that section if the court renders a temporary order that:

(1)    finds that retaining jurisdiction under this section is in the best interest of the child;

(2)    orders the department to return the child to the child's parent;

(3)    orders the department to continue to serve as temporary managing conservator of the child; and

(4)    orders the department to monitor the child's placement to ensure that the child is in a safe environment.

Here, on May 14, 2001, the Department filed an Original Petition for Protection of a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The Department requested that the court immediately appoint the Department temporary sole managing conservator of Mayo's children. The court did so on May 18, 2001, and set an original dismissal date of May 20, 2002, in accordance with Section 263.401.

On May 17, 2002, counsel for the children's father filed a motion requesting the court retain the suit on its docket and set a new dismissal date. On the same day, the court granted the motion, retained the suit on its docket and set a dismissal date of November 13, 2002, pursuant to Section 263.401(b). A final hearing was set for November 1, 2002, and all parties were notified.

In October of 2002 the court ordered all parties to attend and participate in mediation, scheduled for October 24, 2002.  Appellant did not attend. The parties who were present at the mediation reached an agreement whereby the children would be returned to their

father under supervision of the Department. They also agreed the Department would be allowed to file a supplemental petition, adding the children's foster parents as parties to the suit. At a hearing held on November 1, 2002, the court found it was in the children's best interest to be placed in the father's home and ordered them returned to the father on a monitored return. Although notified, appellant was not present at the hearing. The children were returned to the care of their father on November 5, 2002. Pursuant to Section 263.403(b), the dismissal date was reset for April 30, 2003, 180 days from the date the temporary order was rendered.

The monitored placement ended on December 17, 2002, when the court signed an order returning the children to the care of the Department. The order contained findings that the children's father had failed to attend BIPP classes,[2] left the children with individuals not approved by the Department, used alcohol, and left the children with inappropriate care givers. The court reset the final date for dismissal to June 15, 2003, in accordance with Section 263.403 (c).

On June 9 and 13, 2003, the court held a hearing to determine whether the parental rights of appellant and the father of the children should be terminated. The court ordered termination of both parents' parental rights on the 13th, and signed a written judgment to that effect on June 16, 2003. Jeffrey Wayne Mayo, Sr., father of J.W.M., Jr. and L.P.M., filed a notice of appeal, but has not filed a brief or otherwise pursued his appeal.

---

[2]BIPP is a "batterer's intervention program" designed to help prevent domestic violence.

Appellant relies on *In re T.M.*, 33 S.W.3d 341 (Tex.App.–Amarillo 2000, no pet.), to support her contention that the dismissal deadline was improperly extended pursuant to a mediated agreement. The parties in *In re T.M.* attempted to bypass the deadline imposed by Section 263.401 by executing a written agreement to postpone a final hearing and dismissal date. This court held that an agreement to extend the Section 263.401 dismissal date was unenforceable. *Id.*

Appellant is incorrect in her assertion that the court here extended the deadline for a final hearing in order to comply with terms of the mediation agreement. The court followed the agreement to the extent it returned the children to the possession of their father, but the terms of the agreement were not binding on the court, and the deadline for a final order was extended not by the agreement, but by the provisions of Section 263.403. Tex. Fam. Code Ann. § 263.403(b)(2). *In re T.M.* noted that the "deadlines imposed by Section 263.401 may be avoided via an order directing, among other things, the DPRS to relinquish actual physical custody of the child to a parent." 33 S.W.3d at 346 n.4 (citing former Tex. Fam. Code Ann. § 263.402(a), currently § 263.403).

Appellant asserts that allowing additional extensions under Section 263.403, when the 18-month maximum case duration under Section 263.401 has expired, defeats the legislative intent that child custody issues be resolved speedily. But when a statute is clear and unambiguous, we give the statute its common meaning. *One 1985 Chevrolet v. State*, 852 S.W.2d 932, 935 (Tex. 1993); *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). We must presume that the legislature chose its words carefully, that every word in

a statute was included for some purpose and that every word excluded was omitted for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *In re M.J.M.L.*, 31 S.W.3d 347, 354 (Tex. App.--San Antonio 2000, pet. denied). If the legislature intended that Section 263.403 be subject to the time restraints of Section 263.401, we presume that it would have worded the statute to that effect. Instead, the first sentence of Section 263.403 plainly states that it is effective, "Notwithstanding Section 263.401, . . ." Appellant's first issue is overruled.

Appellant, in her second issue, complains that counsel was appointed for her only 21 days before the termination hearing. She couches her complaint as one of ineffective assistance of counsel, arguing, by analogy to the requirement of Rule 245 of the Rules of Civil Procedure that a party be given 45 days notice of a trial setting, that appointment of counsel 21 days before the hearing[3] necessarily rendered counsel's assistance ineffective.

As the Department points out, appellant did not request a continuance or otherwise raise any objection at the termination hearing that her counsel had insufficient time or opportunity to prepare for trial. The Department urges that appellant has not preserved the complaint for appellate review. Appellant argues she is entitled to raise the issue for the first time on appeal. We express no opinion on that question,[4] but will overrule the issue.

---

[3]*Cf.* Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp. 2004) (appointed counsel entitled to ten days preparation time).

[4]Nor do we express an opinion on appellant's contention that the trial court was obligated to appoint counsel for her before she requested counsel or demonstrated indigency.

The Texas Supreme Court has adopted the *Strickland* test as the appropriate standard for evaluating ineffective assistance of counsel claims in civil parental-rights termination proceedings. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003). Under *Strickland*, appellant must first show that her counsel's performance was deficient. 466 U.S. at 687. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, she must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors deprived her of a fair trial, a trial whose result is reliable. *Id.*

Appellant does not assert that she was ineffectively represented.[5] She asserts that the short time provided counsel "greatly affected" her ability to prepare properly for trial of the case, but she does not point to any act or omission of counsel that rendered the representation ineffective. Appellant's second issue is overruled.

Appellant's third issue alleges the trial court erred in allowing the joinder of the foster parents, Ivan and Becky Sharp, and their subsequent appointment as possessory conservators under a mediation agreement. Appellant, although given notice, did not attend a mediation session ordered by the court. An agreement was reached by those attending the mediation that the Sharps should be added as parties to the suit and be named as possessory conservators of the children. The Department filed a supplemental petition in November 2002 naming the foster parents as parties. Appellant contends that the foster

---

[5]Appellant is represented on appeal by the same counsel who represented her by appointment at the termination hearing.

parents do not meet the requirements for joinder in Texas Rule of Civil Procedure 39(a) and that their participation in mediation, and presence in the courtroom during the trial, prejudiced appellant, causing an improper judgment.

The Department contends appellant waived her complaint over joinder of the foster parents, and we agree. A complaint about the joinder of a party is waived if not timely raised with the trial court. *Rosales v. H. E. Butt Gro. Co.*, 905 S.W.2d 745, 751 (Tex.App.–San Antonio 1995, writ denied); *University of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 200 (Tex.App.–Austin 1991, no writ); *see* Tex. R. Civ. P. 41. Appellant did not challenge the joinder of the Sharps, or their presence in the courtroom, at the time of trial.[6] Appellant waived her right to complain of the joinder on appeal.

Moreover, the Sharps expressed a desire to adopt the children. With the exception of five weeks the children resided with their father in the fall of 2002, they were the sole care givers of the children from December of 2001 until the final hearing in June of 2003. Under Section 102.004 of the Family Code, the court may grant a person, deemed by the court to have had substantial past contact with the child, leave to intervene in a pending suit filed by a governmental entity such as the Department. Tex. Fam. Code Ann. § 102.004(b); *In re M.T.*, 21 S.W.3d 925 (Tex.App.–Beaumont 2000, no pet.); *see In re A.M.*, 60 S.W.3d 166,

---

[6]Joinder of the Sharps was among the grounds mentioned in appellant's motion for new trial. Presentation of the objection in that motion, though, did not preserve it for appellate review. *See St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998); *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 145 (Tex.App.–Amarillo 2001, pet. denied)

169 (Tex.App.–Houston [1st Dist.] 2001, no pet.). The Sharps' joinder in the suit as parties accomplished the same result. Appellant's third issue is overruled.

Appellant's fourth issue challenges the sufficiency of the evidence to support the judgment of termination under Section 161.001. The judgment may be affirmed if it is supported by evidence sufficient to establish that one of the grounds listed in Section 161.001(1) exists and that termination is in the best interest of the children, as required by Section 161.001(2). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex.App.–Amarillo 2003, no pet.).

The trial court found that appellant knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, Section 161.001(1)(D); that appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, Section 161.001(1)(E); and that termination of parental rights between appellant and her children was in the best interest of the children. Because we find the evidence sufficient to support the finding under Section 161.001(1)(E), we consider only the evidence addressing that ground. Appellant does not tell us if she challenges the legal sufficiency or factual sufficiency of the evidence. We consider the evidence under both standards.

Findings under Section 161.001 must be based on clear and convincing evidence. Tex. Fam. Code Ann. § 161.001. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the

truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007. The clear and convincing evidence burden of proof requires a higher level of appellate scrutiny in reviewing the legal and factual sufficiency of the evidence. *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 19 (Tex. 2002).

In reviewing legal sufficiency, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that grounds existed for termination under the Family Code. *In re J.F.C.*, 96 S.W.3d at 265-66. When there is a factual sufficiency challenge, we consider only evidence the fact finder could reasonably have found to be clear and convincing. *Id.* at 266. The evidence must be such that a fact finder could reasonably form a firm belief or conviction that grounds exist for termination under Texas Family Code Sections 161.001 and 161.206(a). *In re C.H.*, 89 S.W.3d at 18-19. In the context of our review of the evidence that appellant's conduct, or that of persons with whom she knowingly placed the children, endangered their physical or emotional well-being, to "endanger" means to expose to loss or injury; to jeopardize. *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

The twins were born in May 2000. The record reflects that appellant had little involvement with their care after April 2001, so the evidence with regard to her conduct focuses on the children's first year.

Appellant testified to a history of drug problems. She began using illegal drugs when she was sixteen,[7] beginning with marijuana and later involving cocaine and

---

[7]At the time of the final hearing appellant was twenty-eight years of age.

methamphetamines. Her methamphetamine use began several years before the twins' birth. She testified that she stopped using methamphetamines before she became pregnant with the twins, but resumed use of the drugs within three months after their birth. She used the drugs while caring for the children. Her testimony was that her children were in danger when they were in her care after her drug use resumed. At the hearing, appellant and the twins' father presented a united front on the question of termination, both of them testifying that the parental rights of neither should be terminated. The father testified, though, that appellant's drug use led him to contact the Department as early as January 2001 with regard to the care she was giving the children.

During periods that appellant and her husband were separated after the twins' birth, she also left them in the care of acquaintances she admittedly knew were using drugs. A caseworker testified that appellant admitted leaving the infants for as long as a month. On another occasion to which appellant testified, she went to Florida, leaving her children with a friend who was arrested while caring for the children. The friend's fifteen-year-old daughter took care of the children until appellant returned. Appellant also left the children at home with their father when he was unconscious from drinking.

The record contains sufficient uncontroverted, clear and convincing evidence, much of it from appellant's own testimony, for the court to have reasonably formed a firm belief or conviction that appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical and emotional well-being of the children. Tex. Fam. Code Ann. § 161.001(1)(E).

We next consider whether the evidence is sufficient to demonstrate that termination of appellant's parental rights was in the children's best interest. The evidence offered to prove the grounds for termination is also relevant in determining if termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d at 779. *See also Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Appellant's pattern of absence from her young children continued after the Department assumed responsibility for their care. The record reflects little contact between appellant and those responsible for her children's care for a period of eighteen months beginning about the time of their first birthday. At one point appellant left a halfway house, without notifying the Department of her whereabouts, for approximately nine months. She then had contact with the Department, but a short time later disappeared again for six months. She did not provide financial support for the children. Appellant testified to several reasons for her absence, including concerns for her own physical health, her belief that her parental rights had already been terminated and her knowledge that she was not capable at the time of taking care of the children. Regardless of the reasons for her separation from them, though, the twins were without contact with their mother for a significant part of their lives.

During her absence, the twins had bonded with the Sharps, with whom they had resided since December 2001 except for the five weeks of the failed monitored placement with their father. Even during those weeks, the Sharps had regular contact with the children, sometimes picking them up from day care at their father's request. All parties acknowledged

the quality of care the Sharps had given the children, and that the children were thriving under their care. Becky Sharp testified to their eagerness to adopt the children.

Appellant argues that the court should not base a finding on the best interest of the children simply on the conclusion that the foster parents would be a "better" placement for the children. While the prospect of adoption into a stable home cannot alone be said to be a determinative factor, it clearly is among the factors the court properly could consider in this case. *See In re C.H.*, 89 S.W.3d at 28*; Holley*, 544 S.W.2d at 372. The twins' guardian ad litem cited their need for certainty and stability, and the prospect of an adoptive placement with the Sharps, in recommending termination.

Appellant's case emphasized the improvement in her behavior and circumstances during the months prior to the June 2003 final hearing. She presented undisputed evidence that weighs against a finding that termination was in the children's best interest, including evidence that she had completed an inpatient drug treatment program and CPS parenting classes, and, for a period of time, attended AA meetings on a weekly basis. She also indicated that she relocated to a smaller town in March of 2003, partly to avoid former acquaintances who were involved in drug use. She testified to her desire to raise her children, and to her plans to marry, after her divorce from the twins' father became final, the man with whom she was living. The testimony of that man and of other family members was supportive.

Appellant also testified that she had not used drugs since November 2002. The Department presented a urinalysis report based on a sample taken in late May shortly before

trial that was positive for methamphetamine use. Appellant disputed the correctness of that report, and presented both a urinalysis report and a hair follicle analysis report from samples taken a few days later, both indicating no drug use. There was testimony that a hair follicle analysis will reveal drug use within ninety days of the test; there also was testimony, though, that hair follicle analysis may not reveal very recent drug use.

Appellant does not directly make the argument, but her emphasis on evidence of improvements in her life during the months just before trial suggests greater weight should be given that evidence, mandating the conclusion that the evidence in favor of the best interest finding is factually insufficient. *See, e.g., In re K.C.M.*, 4 S.W.3d 392 (Tex.App.–Houston [1st Dist.] 1999, pet. denied). *But see In re M.G.D.*, 108 S.W.3d 508, 513-14 (Tex.App.–Houston [14th Dist.] 2003, no pet.). Such an analysis is not appropriate in this case. Appellant's long absence from the twins' lives at a tender age and their bonds with prospective adoptive parents provide support for the trial court's finding. Further, although there was evidence that appellant's own prospects for stability had improved before trial, it cannot be said that her rehabilitation was free from doubt. Finally, although the evidence of appellant's resumption of drug use was controverted, the trial court was not required to disregard it. The law observes a strong presumption that a child's best interest is usually served by maintaining the parent-child relationship. *See In re M.D.S.,* 1 S.W.3d 190, 197 (Tex.App.–Amarillo 1999, no pet.). In this case, evidence was both legally and factually sufficient to permit the trial court, as fact finder, reasonably to form the firm belief or conviction that these young children's best interest called for termination of that relationship with their mother.

Appellant's fourth issue is overruled.  The judgment of the trial court is affirmed.



James T. Campbell
Justice