In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00145-CV


______________________________





IN THE INTEREST OF


M.T.C. and D.L.C., JR., MINOR CHILDREN





 


On Appeal from the 6th Judicial District Court


Red River County, Texas


Trial Court No. CV-01534




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 This case is about what rights the various parties will have regarding two minor children,
Mary and Dan. (1) The parties include Shannon Coyel, the children's mother; Jerry Coyel, their
stepfather; (2) Bill Woods, their maternal grandfather; and Sharla Woods, their step-grandmother. The
trial court has held many hearings to sort out the various issues raised by the parties. After the
numerous hearings, the trial court denied relief to the Woodses and named Jerry and Shannon joint
managing conservators.

 On appeal, the Woodses assert abuses of discretion by the trial court in denying the Woodses'
jury demand, denying the Woodses' request to be named joint managing conservators, and denying
Bill Woods grandparental access to the children. 

 We modify the trial court's judgment, and affirm it as modified, because (1) the jury request
was untimely, (2) Sharla Woods lacked standing to seek conservatorship or access and possession,
(3) the trial court did not abuse its discretion in denying Bill Woods' requests to be named joint
managing conservator and to have access to the children.

Factual Background

 About June 19, 2007, Shannon left Jerry and moved to Colorado. She took Dan with her,
but left Mary with Jerry. In July of 2007, Jerry filed for and received temporary sole managing
conservatorship of Mary. On August 11, 2007, Bill and Sharla Woods, Shannon's father and
stepmother, petitioned to intervene in Jerry's action and sought custody of and access to Mary and
Dan. After Shannon returned from Colorado with Dan, Jerry amended his petition for custody to
acknowledge that he and Shannon were, or would soon be, separated and to request that he and
Shannon be appointed joint managing conservators of Mary and Dan.

 Several hearings were held in this matter. In the first hearing, September 10, 2007, the trial
court entered an agreed order naming Jerry and Shannon joint managing conservators of both
children. During the next hearing, held October 11-12, 2007, the court held that the Woodses had
standing to intervene, and then heard evidence on the merits of both the Woodses' petition and Jerry's
amended petition. More than twenty witnesses testified over the two-day period. Each side accused
the other of being unfit for conservatorship. The Woodses alleged that Jerry used drugs, sexually
abused Mary, and emotionally abused Dan. The Woodses also accused Shannon of criminal activity,
drug use, parental negligence, and abandonment. In turn, the Coyels argued that the Woodses lacked
standing to intervene, and Shannon alleged that Bill Woods abused Shannon and knowingly allowed
his family to sexually abuse Shannon when she was a child in their home. The court entered an order
appointing an attorney ad litem for the children, ordering counseling for the children, and naming
Bill Woods, Jerry Coyel, and Shannon Coyel temporary joint managing conservators.

 At the request of the children's attorney, a third hearing was held in February 2008, regarding
issues of counseling for the children. Five months thereafter, in July 2008, the Woodses filed a
demand for jury trial, which the Coyels argued was untimely.

 In December 2008, the trial court granted Bill Woods access to the children until May 4,
2009, (3) and thereafter at such dates and times as mutually agreed upon by Bill Woods and Shannon
Coyel. The court's order denying relief (4) to the Woodses also named Jerry and Shannon joint
managing conservators.

(1) The Jury Request Was Untimely

 Trial was held October 11-12, 2007, and all parties submitted witnesses and evidence on the
merits. Nine months later, the Woodses filed a demand for jury trial, and the trial court held it was
untimely. The Woodses argue that the trial court abused its discretion in denying their jury demand. 
We disagree. 

 We review a trial court's denial of a jury demand for an abuse of discretion. Mercedes-Benz
Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996); In re T.H., 131 S.W.3d 598, 601 (Tex.
App.--Texarkana 2004, pet. denied). In conducting an abuse of discretion review, we examine the
entire record. Mercedes-Benz Credit Corp., 925 S.W.2d at 666. We will find an abuse of discretion
only when the trial court's decision is arbitrary, unreasonable, and without reference to guiding
principles. Id. "A refusal to grant a jury trial is harmless error only if the record shows that no
material issues of fact exist and an instructed verdict would have been justified." Halsell v. Dehoyos,
810 S.W.2d 371, 372 (Tex. 1991). 

 Parties in a family law case have the right to demand a jury trial regarding conservatorship. 
Tex. Fam. Code Ann. § 105.002(a), (c) (Vernon Supp. 2009); In re A.S., 241 S.W.3d 661, 666 (Tex.
App.--Texarkana 2007, no pet.). The Texas Rules of Civil Procedure provide that "[n]o jury trial
shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court
a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than
thirty days in advance." Tex. R. Civ. P. 216; T.H., 131 S.W.3d at 601. 

 Once a nonjury trial has commenced, a party is no longer entitled to a jury trial. See T.H.,
241 S.W.3d at 601-02. Denying a jury demand made after the record is opened and evidence is
received is not an abuse of discretion despite a trial court granting subsequent continuances and
holding further hearings on the matter. See O'Connor v. O'Connor, 245 S.W.3d 511, 516-17 (Tex.
App.--Houston [1st Dist.] 2007, no pet.).

 The Woodses' petition to intervene was first filed September 11, 2007. After an initial
hearing in September 2007, (5) and the entry of temporary orders, the trial court granted the Woodses
permission to intervene "for a hearing on all issues regarding their Petition" and held that "a final
hearing shall be held on October 18, 2007." The contemplated hearing actually occurred
October 11-12, 2007. (6) On October 11, the trial court's docket sheet notes, "All present - Evid on
Merits." On the next day, it notes, "All Present Evid Cont's; all rest; under submission." Evidence
was admitted and more than twenty witnesses testified during the two-day proceeding. (7) When all
parties rested, the trial court held that "[t]he evidence is complete," that it would take "this matter
under consideration," and that it would reopen the evidence if the ad litem so requested. In July
2008, nine months after the hearing in October, the Woodses filed their demand for jury trial.

 Here, the order denying relief states that "[e]vidence was concluded on October 12, 2007,"
and "[e]vents subsequent to [October 12, 2007] may serve as basis for future litigation." The order
indicates that it is based on the evidence produced at the hearings in September and October, and that
the order does not take subsequent proceedings or evidence into consideration. The Woodses failed
to request a jury prior to the October hearing even though all parties had notice that a "final hearing"
was to occur in October. Because the Woodses demanded a jury after the merits of the case were
heard, their demand was untimely. We overrule this point of error.

(2) Sharla Woods Lacked Standing to Seek Conservatorship or Access and Possession

 Bill Woods and Sharla Woods intervened in the Coyels' action and sought conservatorship
and access to the children. The Coyels argued that Sharla lacked standing to intervene for any
purpose. During the October hearings, the trial court heard evidence both on the Woodses' standing
and on the merits of their requests. Though the trial court held that Sharla lacked standing to seek
"possession of and access to the children," nothing in this record contains any decision by the trial
court whether Sharla Woods had standing to seek conservatorship. (8) On appeal, the Woodses argue
that the trial court erred in finding that Sharla lacked standing to seek conservatorship. We disagree
and find that Sharla had standing to pursue neither conservatorship nor access.

 The best interest of the child is always the primary consideration in determining issues of
conservatorship, access, and possession. Tex. Fam. Code Ann. § 153.002 (Vernon 2008). Because
the trial court is in a position to analyze the facts, with regard to issues of conservatorship, control,
possession, child support, and visitation, the trial court is given "wide latitude in determining the best
interests of a minor child." Stallworth v. Stallworth, 201 S.W.3d 338, 347 (Tex. App.--Dallas 2006,
no pet.) (quoting Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982)); In re J.R.D., 169 S.W.3d
740, 743 (Tex. App--Austin 2005, pet. denied). We are without power to reverse the trial court's
order unless it appears from the record as a whole that the trial court abused its discretion. In re
Marriage of Edwards, 79 S.W.3d 88, 98 (Tex. App.--Texarkana 2002, no pet.); Halamka v.
Halamka, 799 S.W.2d 351, 355 (Tex. App.--Texarkana 1990, no writ).

 A trial court does not abuse its discretion if some evidence of substantive and probative
character exists to support the trial court's decision. In re J.P.C., 261 S.W.3d 334, 336 (Tex.
App.--Fort Worth 2008, no pet.). Because a trial court has no discretion in determining what the
law is or applying the law to the facts, however, discretion is abused when a court grants
conservatorship or access to a grandparent who fails to meet the statutory requirements of Section
153.433. See id.; In re B.N.S., 247 S.W.3d 807, 808 (Tex. App.--Dallas 2008, no pet.).

 We review the trial court's determination of a party's standing to file a SAPCR by construing
the pleadings in favor of the petitioner and looking to the pleader's intent. See In re SSJ-J, 153
S.W.3d 132, 134 (Tex. App.--San Antonio 2004, no pet.) (citing Tex. Ass'n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). We review de novo the issue about standing. Id.

 Standing is implicit in the concept of subject matter jurisdiction; as such, it is never presumed
and cannot be conferred by waiver or estoppel. Tex. Ass'n of Bus., 852 S.W.2d at 445-46; In re
H.G., 267 S.W.3d 120, 124 (Tex. App.--San Antonio 2008, no pet.). Thus, standing may be raised
for the first time on appeal, even by a court acting sua sponte. See Tex. Ass'n of Bus., 852 S.W.2d
at 445-46.

 In Texas, a party's standing in a SAPCR is governed by the Texas Family Code, and a party
seeking relief in such suits must plead and establish standing within the parameters of the language
used in the Code. See H.G., 267 S.W.3d at 124; see also Tex. Fam. Code Ann. §§ 102.003-.007
(Vernon 2008 & Supp. 2009). If a party fails to do so, the trial court must dismiss the suit. See In re
C.M.C., 192 S.W.3d 866, 870 (Tex. App.--Texarkana 2006, no pet.).

 Sharla is not a biological or adoptive grandparent of the children in this case; but, regardless
of that fact, for her to have the right to intervene, it must be shown that she has "had substantial past
contact" with the children. Tex. Fam. Code Ann. § 102.004(b). What constitutes "substantial past
contact" is not statutorily defined, and our search of the caselaw has not revealed any formal caselaw
definition. C.M.C., 192 S.W.3d at 871. Because of the language of the controlling statute, however,
our inquiry should focus on the amount of actual contact which occurred rather than the difficulties
encountered in maintaining contact. Id.

 Neither Mary nor Dan have ever been to the Woodses' home in Kansas. Sharla testified that
she saw the children only "about twice a year" and that Bill usually spoke on the telephone with
either Shannon or the children "about once a week." Shannon conceded that Bill and Sharla would
mail the children cards and gifts on holidays, but she also testified that, over the preceding decade,
the Woodses had seen the children for a total of only three weeks. 

 "Substantial" is defined generally as "of ample or considerable amount, quantity, size, etc."
Random House Webster's Unabridged Dictionary 1897 (2nd ed. 1987); see C.M.C., 192
S.W.3d at 872. Even accepting the Woodses' testimony regarding contact with the children as true,
the evidence does not raise a fact issue on substantial past contact. Texas cases in which substantial
past contact has been found have involved incomparably more contact than the contact in this case. 
See, e.g., Chavez v. Chavez, 148 S.W.3d 449, 456 (Tex. App.--El Paso 2004, no pet.) (standing to
intervene when children had resided with grandparents for over a year); In re A.M., 60 S.W.3d 166,
168 (Tex. App.--Houston [1st Dist.] 2001, no pet.) (standing when seventeen-month-old child had
resided with foster parents for fourteen months); In re M.T., 21 S.W.3d 925, 926 (Tex.
App.--Beaumont 2000, no pet.) (standing to intervene when children had resided with foster parents
for fourteen months); In re Hidalgo, 938 S.W.2d 492, 495-96 (Tex. App.--Texarkana 1996, no writ)
(step-grandmother had standing to file petition for managing conservator when she and child had
been close since child's birth and child had resided with step-grandmother); Hirczy v. Hirczy, 838
S.W.2d 783, 786 (Tex. App.--Corpus Christi 1992, writ denied) (ex-husband of child's mother had
standing when he had resided with child for three years in father role); Rodarte v. Cox, 828 S.W.2d
65, 69-70 (Tex. App.--Tyler 1991, writ denied) (foster parents had standing to intervene when child
had resided with them for over two years); see also In re J.W.M., 153 S.W.3d 541, 546-47 (Tex.
App.--Amarillo 2004, no pet.) (issue of standing may have been waived and children had resided
with foster parents for fifteen months).

 Sharla saw the children only twice per year; and, although there was evidence of telephone
calls, cards, and gifts, such interaction is too minimal under the circumstances of this case to create
a fact issue concerning substantial contact. Even when viewed in a light most favorable to Sharla,
the evidence shows as a matter of law that Sharla did not have substantial past contact with the
children. See C.M.C., 192 S.W.3d at 872. Therefore, Sharla lacked standing to seek
conservatorship, and we modify the judgment accordingly to clarify that she entirely lacked standing
herein.

(3) The Trial Court Did Not Abuse Its Discretion in Denying Bill Woods' Requests to be Named
Joint Managing Conservator and to Have Access to the Children

 The trial court held that awarding joint managing conservatorship to Bill Woods was "not
in the best interest of the children" and that Bill failed to prove "that denial of possession of or access
to the child[ren] would significantly impair the child[ren]'s physical health or emotion[al]
well-being." In the Woodses' final points of error, they contend that the trial court abused its
discretion by denying Bill Woods' request for joint managing conservatorship of, and access to, the
children. We disagree. 

 There is a strong presumption that the best interest of a child is served if a natural parent is
appointed as a managing conservator. Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex. 1990);
De La Pena, 999 S.W.2d at 527; In re A.D.H., 979 S.W.2d 445, 447 (Tex. App.--Beaumont 1998,
no pet.); see also Brook v. Brook, 881 S.W.2d 297, 299 (Tex. 1994). Under Chapter 153 of the
Texas Family Code: 

 [U]nless the court finds that appointment of the parent or parents would not be in the
best interest of the child because the appointment would significantly impair the
child's physical health or emotional development, a parent shall be appointed sole
managing conservator or both parents shall be appointed as joint managing
conservators of the child.


Tex. Fam. Code Ann. § 153.131(a) (Vernon 2008). Thus, in an original proceeding for a
conservatorship determination, even "evidence that the nonparent would be a better custodian" is
insufficient to support the appointment of a nonparent as managing conservator in preference to a
parent. See Lewelling, 796 S.W.2d at 167. Rather, the nonparent is required to "affirmatively prove
by a preponderance of the evidence that appointment of the parent as managing conservator would
significantly impair the child, either physically or emotionally." Id.

 Similarly, "[p]ossession of or access to a child by a grandparent is governed by the standards
established by Chapter 153 [of the Texas Family Code]." In re Chambless, 257 S.W.3d 698, 700
(Tex. 2008) (quoting Tex. Fam. Code Ann. § 102.004(c)). A grandparent seeking court-ordered
visitation must "overcome[ ] the presumption that a parent acts in the best interest of the . . . child
by proving by a preponderance of the evidence that denial of possession of or access . . . would
significantly impair the child's physical health or emotional well-being." Id. (quoting Tex. Fam.
Code Ann. § 153.433(a)(2)). A trial court abuses its discretion when it grants access to a
grandparent who has not met this standard. In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007) (per
curiam).

 In this case, while there is conflicting testimony, there is ample evidence to support the
judgment. (9) The children have not had substantial past contacts with the Woodses, seeing them only
a couple of times per year. Despite the allegations of drug use, the results of Shannon's hair-follicle
drug test were negative. Larry Spangler, Chief Deputy of the Red River County Sheriff's
Department, testified that he had known Jerry and Shannon for "ten or twelve years" and that, despite
the Woodses' allegations, he had never seen anything to indicate Jerry was abusing Mary. Spangler's
wife, Brenda, testified that Jerry had a "very good" relationship with the children, that the children
were well taken care of, and that she had never "noticed anything about Jerry that was inappropriate
with the children." Johnny Ray Hatcher, the children's maternal step-grandfather, having been
around the children "quite a bit," testified that granting managing conservatorship to the Woodses
would be detrimental to the children and that he had never seen anything in the children's actions to
indicate they were neglected. Jerry's brother, James Coyel, lived on the Coyels' ranch and saw Jerry,
Shannon, and the children practically "every day," but he never saw Jerry do anything inappropriate
around the children. James Coyel characterized the children's relationship with their mother and
stepfather as "normal." Mary wanted to stay with Jerry and Shannon, and Dan testified that he
wanted to remain with Shannon because the thought of living with someone else badly scared him. 
It was undisputed that both children were excelling in their current school. 

 There is ample evidence supporting the trial court's refusal to grant Bill Woods
conservatorship of or access to the children. We conclude that the trial court did not abuse its
discretion in holding that Bill Woods failed to (1) prove that denying him access to the children
would significantly damage the children's well-being and (2) overcome the presumption that the
Coyels would act in the children's best interests. See Tex. Fam. Code Ann. § 153.433(a)(2) (Vernon
Supp. 2009), § 153.131(a) (Vernon 2008); Troxel v. Granville, 530 U.S. 57, 67 (2000); In re
Mays-Hooper, 189 S.W.3d 777, 778 (Tex. 2006) (per curiam); J.P.C., 261 S.W.3d at 336. 
Accordingly, we overrule these points of error.

 We modify the judgment of the trial court to reflect that Sharla Woods lacked standing
entirely herein; we affirm the judgment as so modified.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 1, 2009

Date Decided: October 23, 2009

1. In this case, rather than using the often confusing initials M.T.C. and D.L.C. Jr., we will
refer to the children as "Mary" and "Dan," respectively.
2. Mary and Dan's biological father died in 1997.
3. The visitation was to be at such times and places as the counselor, Ronikaye Rusak, deemed
appropriate.
4. The initial order denying relief in a suit affecting the parent-child relationship (SAPCR) was
filed December 5, 2008; but a corrected order denying relief was filed December 15, 2008. When
this opinion refers to the "order denying relief," we refer to the corrected order. The order denied
"all other relief sought by Intervenors Bill P. Woods and Sharla Woods."
5. The record reflects that the September hearing was to identify the parties and determine the
issues in dispute.
6. The record is unclear as to why the final hearing was moved from October 18 to
October 11-12.
7. The evidence introduced during the October hearing dates was on the merits of the
conservatorship and access issues and not "explicitly for the purpose of allowing the Woods[es] a
full hearing on their intervention request" as alleged by the Woodses.
8. The court's finding that Sharla lacked standing to pursue "possession of and access to the
children" matches the "visitation" language of Section 153.433 of the Texas Family Code, rather than
the conservatorship language of Section 102.004. See Tex. Fam. Code Ann. § 153.433 (Vernon
Supp. 2009), § 102.004 (Vernon 2008).
9. The trial court implicitly limited its evidentiary basis for the order denying relief to the
evidence before it on or before October 12, 2007. However, the record on appeal contains, and both
parties cite to, hearings and evidence produced after October 12, 2007. Whether we consider the
entire record on appeal, or only that evidence explicitly relied on by the trial court, there is ample
evidence to support the order denying relief, and therefore, in either event, the trial court did not
abuse its discretion.


eral law, the First Amendment, and the TCHRA. In Matthews, the court
ruled the defendant did not have a qualified immunity for violating Title VII. Id. at 847. We
need not reach a decision as to whether Ferguson would be immune from civil suit under
the TCHRA, because we have determined the trial court lacked subject-matter jurisdiction
over Davis' retaliation claim. Therefore, the only remaining claim against Ferguson is for
the common-law tort of intentional infliction of emotional distress. We conclude there is
no genuine issue of material fact as to Ferguson's official immunity defense. Ferguson's
official immunity under Section 22.051(a) of the Education Code bars the claim for
intentional infliction of emotional distress because, under Section 22.051, he is immune
from suit except in circumstances of excessive force in the discipline of students or
negligence resulting in bodily injury to students. See Tex. Educ. Code Ann. § 22.051(a).

 The trial court did not err in finding that Region VIII had sovereign immunity and that
Ferguson had sovereign immunity in his official capacity and official immunity in his
individual capacity. Davis' first point of error is overruled.

 The judgment is affirmed.

 

 Donald R. Ross

 Justice


Date Submitted: November 8, 2001

Date Decided: December 5, 2001


Publish

1. Texas Commission on Human Rights Act (TCHRA).
2. Davis complained at oral argument of the dismissal of her claims for discrimination
and sexual harassment. However, at the time summary judgment was granted, neither of
these claims had been pled, and she did not raise these claims in her brief before this
Court. The only TCHRA claim before this Court is her retaliation claim.
3. 42 U.S.C.A. § 2000e-4(g)(1) (West 1994) empowers the EEOC to enter into these
kinds of agreements with state and local agencies. In the 1998 Worksharing Agreement,
"the EEOC and the [TCHR] each designate the other as its agent for the purpose of
receiving and drafting charges, including those that are not jurisdictional with the agency
that initially receives the charges." Vielma v. Eureka Co., 218 F.3d 458, 462 (5th Cir.
2000). In this type of case, when a complainant files an initial charge with the EEOC, that
charge will also be considered filed with the TCHR. See Griffin v. City of Dallas, 26 F.3d
610, 612-13 (5th Cir. 1994); Price v. Philadelphia Am. Life Ins. Co., 934 S.W.2d 771, 773
(Tex. App.-Houston [14th Dist.] 1996, no writ).
4. Tex. Lab. Code Ann. § 21.256 (Vernon 1996). The sixty-day statute of limitations
in Tex. Lab. Code Ann. § 21.254 (Vernon 1996) takes precedence over the two-year
statute of limitations in Section 21.256. Roberts v. Padre Island Brewing Co., 28 S.W.3d
618, 620-21 (Tex. App.-Corpus Christi 2000, pet. denied); Sibley v. Kaiser Found. Health
Plan, 998 S.W.2d 399, 405 (Tex. App.-Texarkana 1999, no pet.) (in action for employment
discrimination, compliance with sixty-day limitations period requires service on defendant
within that period). 

5. "The Judicial power of the United States shall not be construed to extend to any
suit in law or equity, commenced or prosecuted against one of the United States by
Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.
amend. XI.

6. The Tort Claims Act defines "governmental unit" as: 


 (A) this state and all the several agencies of government that
collectively constitute the government of this state, including other agencies
bearing different designations, and all departments, bureaus, boards,
commissions, offices, agencies, councils, and courts;


 (B) a political subdivision of this state, including any city, county,
school district, junior college district, . . .


 . . . .


 (D) any other institution, agency, or organ of government the status
and authority of which are derived from the Constitution of Texas or from 
laws passed by the legislature under the constitution. 


Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(A), (B), (D) (Vernon Supp. 2002).
7. "An employee or volunteer of a regional education service center is immune from
liability to the same extent as an employee or volunteer of a school district." Tex. Educ.
Code Ann. § 8.006 (Vernon Supp. 2002).
8. A "professional employee" includes: 


 (1) a superintendent, principal, teacher, supervisor, social worker,
counselor, nurse, and teacher's aide; 


 . . . . 


 (4) any other person whose employment requires certification and the
exercise of discretion. 


Tex. Educ. Code Ann. § 22.051(c) (Vernon 1996).