

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00232-CV

IN THE INTEREST OF T.C. AND J.C., CHILDREN

_____

No. 07-18-00233-CV

IN THE INTEREST OF T.C., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court Nos. 88,731-E & 89,364-E; Honorable Carry Baker, Presiding

August 23, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, T.C., appeals from the trial court's separate orders terminating his parental rights to his children T.C., J.C., and T.C.[1] The mother's parental rights were also terminated, and her appeals were disposed of this same day in appellate cause numbers 07-18-00080-CV, styled _In the Interest of T.C. and J.C., Children_, and 07-18-00081-CV,

---

[1] To protect the privacy of the parents, the children, and other parties, we refer to them by their initials. _See_ TEX. FAM. CODE ANN. § 109.002 (West Supp. 2017). _See also_ TEX. R. APP. P. 9.8(b).

styled *In the Interest of T.C., a Child.*[2]  By two issues, T.C. contends the evidence is legally and factually insufficient to support termination under (1) paragraphs (O) and (P) of section 161.001(b)(1) of the Texas Family Code and (2) paragraphs (D) and (E) of that same section.[3]  We affirm.

BACKGROUND

T.C. used cocaine when he was young but became sober before his children were born.  In November 2015, after T.C.'s second child tested positive for cocaine at birth, the Department opened an investigation on the children's mother.  The children were removed from the home T.C. shared with the children's mother due to the mother's significant history of drug abuse.  The Texas Department of Family and Protective Services placed the children with the maternal grandmother, T.H., opened a family-based investigation on the children's mother, and implemented a safety plan that required T.C. or the children's grandmother to supervise the mother around the children.

On October 31, 2016, just weeks after T.C.'s third child was born, the Department received a report of neglectful supervision by the mother concerning all three children.  It was reported that she had been seen selling crack cocaine from her car at night while all three children were with her.  The following day, she entered an inpatient treatment facility in Lubbock.

---

[2] Due to the parents presenting conflicting issues on appeal, the appeals were severed.  *See In the Interest of T.C.*, Nos. 07-18-00080-CV, 07-18-00081-CV, 2018 Tex. App. LEXIS 4442, at *1 (Tex. App.—Amarillo June 12, 2018, order).

[3] Although T.C.'s issues in the *Table of Contents* and in the *Argument* only recite a challenge to the factual sufficiency of the evidence, the *Standard of Review and Summary of Argument* also address the legal sufficiency of the evidence.  We liberally construe T.C.'s brief as challenging both the legal and factual sufficiency of the evidence and consider both in our analysis.

The Department's investigator requested drug testing for all parties. The children tested positive for very high levels of cocaine from exposure. The grandmother could not explain why they tested positive while living with her. Eventually, it was discovered that the children's mother had been smoking crack cocaine around the children "a lot" without supervision by T.C. or the grandmother as required by the safety plan. Test results on the maternal grandmother revealed morphine and codeine in her system but she later provided prescriptions for those drugs. T.C. refused to submit to a drug test at that time.[4] Based on the drug screen results and no other placement options, the children were removed from the grandmother's home and placed in foster care on November 16, 2016.[5]

The Department opened a separate investigation on the newborn child and on November 16, 2016, it filed its original petition seeking termination of both parents' rights as to all three children. The Department alleged all but four statutory grounds for termination against T.C. as well as an allegation that termination was in the children's best interests. A service plan was developed for T.C. and later, a second plan labeled a "family service plan evaluation" was implemented adding more service goals for T.C. to complete.

At a bench trial, evidence established that T.C. was not protecting his children from their mother's drug use and at times, T.C. was also using drugs. The Department's

---

[4] T.C. was not under a service plan at the time and believed he was not required to submit to a drug test.

[5] No other relatives were willing to take the three children and the maternal grandmother was denied approval after a home study. The reasons given were her medications, use of oxygen and smoking in the home by another resident, a chemical smell in the home that she attributed to cleaning products, and her finances.

investigator testified that T.C. admitted to her that he refused to submit for drug testing when all the family was tested because he had recently used cocaine. Eventually, he submitted for testing and the result confirmed he had used cocaine.

The trial court signed termination orders based on the following statutory grounds set forth in section 161.001(b)(1) of the Family Code: (D) (knowingly placed or allowed the children to remain in conditions or surroundings which endangered their well-being), (E) (engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their well-being), (O) (failed to comply with a court order that established the actions necessary for the parent to obtain the return of the children following their removal under chapter 262 of the Family Code) and (P) (used a controlled substance in a manner that endangered the health and safety of the children). TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P) (West Supp. 2017).[6] The trial court also found that termination of T.C.'s parental rights was in the children's best interests. § 161.001(b)(2).

APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes (1) one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and (2) that termination of that relationship is in the best interest of the child. See § 161.001(b)(1), (2); Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West 2014). "'Clear and convincing evidence' means the

---

[6] All further references to "section" or "§" are to the Texas Family Code unless otherwise designated.

4

measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In the Interest of E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In the Interest of E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm

belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In the Interest of J.F.C.*, 96 S.W.3d at 266).

In conducting a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In the Interest of J.F.C.*, 96 S.W.3d at 266 (citing *In the Interest of C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In the Interest of J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

SECTION 161.001(b)(1)(E)

Parental rights may be terminated under paragraph (E) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the children's physical or emotional well-being. The cause of the danger to the children must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E)

6

requires more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In the Interest of D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied).

Endanger means to expose to loss or injury; to jeopardize; *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *See In re M.C.*, 917 S.W.2d at 269. *See also In the Interest of T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.). A parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct. *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Drug use is relevant evidence on the issue of endangerment. *In the Interest of K.V.*, No. 07-15-00424-CV, 2016 Tex. App. LEXIS 3985, at *6 (Tex. App.—Amarillo April 14, 2016, no pet.) (mem. op.) (citing *Dupree v. Tex. Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ)). Drug use is also a course of endangering conduct and a parent bears the responsibility to guard against potential dangers to a child. *In the Interest of H.L.*, No. 07-17-00070-CV, 2017 Tex. App. LEXIS 6533, at *15 (Tex. App.—Amarillo July 13, 2017, pet. denied) (mem. op.). This court and other courts have consistently found that a parent's decision to leave a child in the care of a known drug user is relevant to the predicate acts or omissions outlined in paragraph (E). *See id.* at *15-16. *See also In the Interest of J.J.*, No. 07-13-00117-CV, 2013 Tex. App. LEXIS 11194, at *12-13 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.); *In the Interest of M.M.*, No. 02-08-00275-CV, 2009 Tex. App. LEXIS 5714, at *21 (Tex.

App.—Fort Worth July 23, 2009, no pet.) (mem. op.); *In the Interest of J.W.M.*, 153 S.W.3d 541 548 (Tex. App.—Amarillo 2004, pet. denied).

T.C. was fifty-one at the time of the final hearing. He admitted to using cocaine when he was in his thirties, and although he claimed his issues with drugs were "in the past," he had several relapses while the Department was involved with his children. Although the Department's caseworker testified that T.C. did not use drugs in the presence of his children and did not relapse often, when he did relapse, his drug levels were significantly higher than those of the children's mother.

Although T.C. had steady employment and provided a suitable home for his children, he did not avail himself of some of the Department's required services on substance abuse. He did not attend AA/NA meetings because he did not believe in making a declaration at meetings that he is an addict. Instead, he found support through his men's church group.

The caseworker testified that T.C. did not maintain a drug-free lifestyle. He did not always attend his drug screenings when they were requested. Although his urinalysis test results were negative, his hair follicle tests were positive. The caseworker testified that T.C. claimed he was not using drugs. A doctor, however, informed her that tests conducted on T.C.'s body hair (underarm) rather than hair from his head could result in positive results for up to a year. T.C. did admit to relapsing during the Department's investigation. After a fourteen-month investigation, T.C. asked for another chance to maintain his sobriety.

It undisputed that T.C. knew the children's mother had serious drug abuse issues—he or the maternal grandmother were required to supervise her around the children to guard against any danger to them. After the children's mother completed her drug rehabilitation program, she and T.C. lived together. She did not, however, maintain a drug-free lifestyle and tests on her hair follicles throughout the investigation were positive.

The caseworker testified that she had conversations with T.C. advising him that his future with his children was intertwined with the children's mother and that his knowledge of her drug use and his refusal to remove her from his home was enabling her and could be detrimental to him. According to the caseworker, T.C. "did not feel in good conscience that he could kick [the children's mother] out . . ." without being ordered to do so by the court. She testified that she reminded T.C. that the judge had explained to both parents that if they remained a couple and one of them relapsed, the children could not remain in a place where harmful drugs were being used.

The evidence before the trial court established that T.C. was using cocaine during the Department's investigation. Also, by failing to act on his knowledge of the children's mother's serious drug abuse issues, T.C. knowingly allowed his children to be around a person who engaged in conduct that endangered their well-being. Their daughter had tested positive for cocaine at birth and after their third child was born, all three children tested positive for very high levels of cocaine due to exposure at a time when T.C. had been charged with supervising the mother around the children. The evidence was sufficient for a fact finder to reasonably form a firm belief or conviction that T.C. engaged

9

in conduct or allowed his children to be around their mother when she engaged in conduct that endangered their well-being.

Only one predicate ground under section 161.001(b)(1) is sufficient to support a termination order. *In the Interest of T.N.*, 180 S.W.3d at 384. Additionally, T.C. does not challenge the trial court's best interest findings. *See* § 161.001(b)(2). Consequently, having found the evidence legally and factually sufficient to support termination of T.C's parental rights under paragraph (E), we overrule that portion of issue one and a discussion on paragraph (D) is pretermitted. T.C.'s second issue by which he challenges termination of his parental rights under paragraph (O) and (P) is also pretermitted. TEX. R. APP. P. 47.1.

CONCLUSION

The trial court's orders terminating T.C.'s parental rights to his children T.C., J.C., and T.C. are affirmed.


Patrick A. Pirtle
Justice