

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00165-CV

IN THE INTEREST OF A.N.D. AND A.T.D., CHILDREN

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 56,033-C, Honorable Jack M. Graham, Presiding

September 26, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

The father of A.N.D. and A.T.D., Arman, appeals the decision of the trial court to terminate the parent-child relationship existing between him and the children. Arman contends that the evidence is legally and factually insufficient to find any of the alleged predicate events required to support termination, and that the evidence is also legally and factually insufficient to support that termination of Arman's parental rights is in the best interest of the children.[1] Disagreeing with Arman, we will affirm the decision of the trial court.

---

[1] The mother's parental rights were terminated by the filing of an affidavit of relinquishment in this same proceeding. No appeal has been taken by the mother.

## Factual and Procedural Background

The efforts of the Texas Department of Family and Protective Services to deal with the family unit involved in this termination case stretch back to 2004, when the first case was presented. The initial action was an intake alleging neglectful supervision by the mother, which alleged that the children in question were being left with other people. At the time of the initial intake, Arman could not be located. There were subsequent cases in December 2004 and again in 2005, which again alleged neglectful supervision of the children by the mother. The 2005 case was "ruled out." After the 2005 incident, the Department filed yet another case in March 2006. This filing resulted in the children being placed in Arman's care and custody. The pending case was later closed, and Arman returned the children to the mother. Then, in May 2007, another case was opened. At this time, the children were back living with the mother. The record is unclear about the ultimate disposition of this 2007 case. Next, the Department became involved again in April 2008, when a report of neglectful supervision was once again reported. The Department was unable to find Arman at this time.

In November 2009, the Department was called when a report was received of the mother physically abusing A.T.D. by banging his head against the floor. As regards Arman at the time of this investigation, the Department's testimony was that Arman was called regarding a possible placement but this was not followed up on because Arman did not have his own residence and did not feel he had room to take the children. The Department's position was that Arman refused to take the children. On December 18, 2009, the Department was appointed temporary managing conservator of the children.

This case was dismissed by the trial court on June 6, 2011. This case was dismissed after the mother's drug screen came back negative for any use of drugs.

Then on July 19, 2011, the Department received an intake on the two children that resulted from concerns that CASA[2] volunteers had regarding the deteriorating state of the mother's mental stability. The specific intake alleged that the children were known to be going from door to door in the apartment complex where they were lived searching for food. Additionally, there were reports of different people coming and going from the mother's apartment at different times of the night. This is the referral that ultimately led the Department to seek to terminate both the mother's and Arman's parental rights.

On July 21, 2011, the Department filed its original petition seeking to terminate Arman's parental rights. As predicate grounds the original petition alleged that Arman had:

> 1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children,
>
> 2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children.

See TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (West Supp. 2012).[3] Subsequently, on August 7, 2012, the Department filed its first amended petition for termination of Arman's parental rights. In addition to the allegations alleged in the original petition, the Department alleged that Arman had:

---

[2] Court Appointed Special Advocates

[3] Further reference to the Texas Family Code Annotated will be by reference to "section ____" or "§ ____."

3) failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition,

4) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the father; (2) the father has not regularly visited or maintained significant contact with the children; and (3) the father has demonstrated an inability to provide the children with a safe environment,

5) failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

See id. (F), (N), and (O).

This matter was heard in a bench trial on March 7 and 8, 2013. The Department's case consisted of the various investigators, case workers, and the supervisor at the Department who had been involved in the case, along with the children's therapists, both in Texas and New Mexico. Additionally, Arman's counselor and the psychologist who performed the psychological evaluation of Arman each testified. Arman testified in his own behalf. After hearing the evidence, the trial court found that the Department had proved by clear and convincing evidence that Arman had committed the predicate acts outlined in section 161.001(1)(D), (E), and (O). Further, the trial court found that it was in the best interest of the children that Arman's parental rights be terminated. See § 161.001(2). Arman filed a request for findings of fact and conclusions of law. Arman then filed a motion for new trial which was denied by written order. The trial court filed written findings of fact and conclusions of law on May 31, 2013.

4

Arman has perfected his appeal and, in four issues, contests the legal and factual sufficiency of the evidence to support the trial court's rulings that Arman committed the predicate acts found and the finding that termination is in the best interests of the children. We will affirm.

Standards of Review

The natural right existing between parents and their children is of constitutional dimensions. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. Holick, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. See In re C.H., 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental

rights under section 161.001.  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).  Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated.  See id.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see § 161.206(a) (West 2008).  "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  § 101.007 (West 2008).  This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the fact-finder's role.  In re C.H., 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.  See In re J.F.C., 96 S.W.3d at 266.  "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  Id.  In other words, we will disregard all evidence that a reasonable trier of fact could have disbelieved or found to have been incredible.  Id.

6

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." In re C.H., 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable finder of fact could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.

Applicable Law and Analysis

Arman contends that the evidence is legally and factually insufficient to support a finding of a predicate act or omission that would serve as grounds for terminating his parental rights to the children. The Department counters by pointing to evidence that the mother had an extensive history of abuse and neglect of the children and that Arman, although being aware of the mother's history, never took steps to intervene or protect the children. Further, during the only occasion that Arman had the children, he unilaterally decided he could not take care of them and returned them to the mother. On another occasion when the Department was going to allow Arman to take the children, he refused, citing an inability to provide for them. These facts coupled with Arman's instability in housing and employment lead to the conclusion that termination of Arman's parental rights are in the best interest of the children.

Predicate Act or Omission

Of the three grounds found by the trial court as supporting termination of Arman's parental rights, two were subsections (D)'s endangering environment or conditions and subsection (E)'s endangering conduct. See § 161.001(1)(D), (E). Evidence concerning subsections (D)'s and (E)'s statutory grounds for termination is interrelated; therefore, we will consolidate our review of the evidence supporting these grounds.[4] See In re N.K., 399 S.W.3d 322, 329 (Tex.App.—Amarillo 2013, no pet.); In re I.G., 383 S.W.3d 763, 770 n.6 (Tex.App.—Amarillo 2012, no pet.). Endangerment of the child's physical or emotional well-being is an element of both subsections (D) and (E). See § 161.001(1)(D), (E); see also In re N.K., 399 S.W.3d at 329–30.

"[E]ndanger" means "to expose to loss or injury; to jeopardize." Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." Id.; see In re P.E.W., 105 S.W.3d 771, 777 (Tex.App.—Amarillo 2003, no pet.) (observing that child "need not develop or succumb to a malady" in order to prove endangering conditions). In our review, we not only look at evidence regarding the parent's active conduct, but we also consider evidence

---

[4] Indeed, this Court has observed the interrelated nature of evidence that could support these two statutory grounds for termination: "Although the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering 'environment.'" In re D.R.J., No. 07-08-00410-CV, 2009 Tex. App. LEXIS 5231, at *7 (Tex.App.—Amarillo July 8, 2009, pet. denied) (mem. op.) (citing In re D.T., 34 S.W.3d 625, 633 (Tex.App.—Fort Worth 2000, pet. denied)). That is not to say, however, that the two subsections require the same evidence. See In re U.P., 105 S.W.3d 222, 236 n.7 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (discussing the distinctions between subsections (D) and (E)).

showing the parent's omissions or failures to act.  In re A.B., 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied).  The Texas Supreme Court has reiterated that endangering conduct is not limited to actions directed toward the child: "It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."  In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009); see In re T.N., 180 S.W.3d 376, 383 (Tex.App.—Amarillo 2005, no pet.).

<u>The Mother's Physical and Emotional Abuse of The Children</u>

The record before us demonstrates a clear pattern of physical and mental abuse of the children by the mother.  Additionally, the record further demonstrates that the mother suffered from significant episodes of mental instability.  The mother was the parent with physical possession of the children on each of the occasions that the Department was called to become involved in the family.  Further, the record demonstrates that Arman had not been significantly involved in the lives of the children for several years prior to the last case opened by the Department.  Appellant had lived in several states at a number of different residences during this period and had an abysmal track record of employment.  He simply was not engaged within the dynamics of the family.

Arman contends that he was very involved in the lives of his children, yet the evidence appears to show otherwise.  For instance, when the children were placed with Arman in 2006, he returned them to the mother in 2007.  His stated reason for returning the children was that he could not provide for them.  Arman testified that even when he

did not have the physical possession of the children he was involved in their lives. Yet, the mother's cousin testified that, at one point, the mother and the children lived with her for a period of months and she never saw Arman. Further, Arman's own testimony reveals that he was constantly moving in and out of Texas in search of job opportunities.

During Arman's psychological exam by Dr. Edwin Basham, Arman provided information that led Dr. Basham to express the opinion that the children were, at least, at risk for being mistreated. Further, Arman told his own counselor, Delois Hinders, that he was aware that the mother was somewhat emotionally unstable and explosive. In relation to the mother's punishment of the children, Arman told the counselor that the mother was harsh in her punishment of the children and that the punishment was inappropriate and punitive in nature. The conclusion drawn by Arman's counselor was that Arman had always known that the mother was harsh as a parent, punitive in her punishment to the edge of being abusive.

Despite Arman's testimony to the contrary, the evidence shows that Arman was aware of the home life that the children were living in, for he, early on, had been the recipient of some of the mother's violent outbursts. Further, the evidence supports the proposition that Arman did not take any steps to protect the children, even though he knew of the mother's propensities.

Simply put, there is sufficient evidence to show that Arman was aware of the risk posed to the children by the mother, and yet, Arman chose to ignore that risk. See In re S.M.L., 171 S.W.3d 472, 477 (Tex.App.—Houston [14th Dist.] 2005, no pet.) (child

endangered when environment creates potential for danger that parent is aware of but disregards).  The record suggests that, not only was Arman aware of the risk posed by the mother, he, in fact, knew that she had abused the children and yet did nothing to remove the children from her care. See In re C.M.B., 204 S.W.3d 886, 895 (Tex.App.—Dallas 2006, pet. denied) (cause of endangerment under (E) must be parent's conduct, evidenced by not only actions of parent but also by omissions of parent); Phillips v. Tex. Dep't of Protective & Regulatory Servs., 25 S.W.3d 348, 354 (Tex.App.—Austin 2000, no pet.)(holding that a parent's failure to act endangered children).

Turning to the issue of Arman's own instability, the record paints a picture of a man who goes from job to job living where he can in a catch-as-catch-can existence. Much of the time Arman is not even able to take care of himself and, when asked by the psychologists and the counselor about why he is living thusly, Arman has no real answer.  Both the psychologist, Dr. Basham, Arman's counselor, Hinders, and the Department's supervisor, Katie Klaehn, all opined that Arman's instability would prevent him from being able to be the primary caregiver for the children.  Conduct which subjects children to a life of uncertainty and instability endangers the physical and emotional well-being of the children.  In re M.C., No. 02-08-00146-CV, 2008 Tex. App. LEXIS 8913, at *3 (Tex.App.—Fort Worth Nov. 26, 2008, no pet.) (mem. op.) (citing In re R.W., 129 S.W.3d 732, 738-39 (Tex.App.—Fort Worth 2004, pet. denied)).

When we view the evidence in the light most favorable to the trial court's finding, as we must do in a legal sufficiency review, we find that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.  See In re J.F.C., 96 S.W.3d at 266.  Further, our review of the entire

11

record convinces us that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations.  In re C.H., 89 S.W.3d at 25. The application of the record before us to the guiding legal principles regarding subsections (D) and (E) result in our determination that the evidence is both legally and factually sufficient to support the trial court's determination that Arman had committed the predicate grounds alleged in the Department's amended petition.  See § 161.001(1)(D), (E).  Further, our review convinces us that this is so by clear and convincing evidence. See In re J.F.C., 96 S.W.3d at 263; § 101.007.

Arman's position is that he was involved in the children's lives and, to prove this, he offered his testimony.  Further, Arman contends that the only time he was not involved was during the last case brought by the Department, and this was due to the Department making it almost impossible for him to see the children.  Finally, Arman contends that he did not know that the mother was physically abusive to the children, and he faults the Department for returning the children to the mother after the 2009 case was opened.  The problem with most of Arman's contentions is that they are nothing more than conflicts in the testimony and, as such, the conflicts must be resolved by the trier of fact, in this case, the trial judge.  See In re J.F.C., 96 S.W.3d at 266.  The trial judge has resolved these conflicts against Arman and, when we apply the standards for review for the legal and factual sufficiency of the evidence, we cannot say that the trial court erred in its determination.  Appellant's issues one and two are overruled.  Inasmuch as only one predicate ground is necessary to support termination of parental rights, we will not address the remaining statutory grounds found by the trial court. See  In re A.V., 113 S.W.3d at 362.

Best Interest of the Children

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. In re R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. See Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976); see also TEX. FAM. CODE ANN. § 263.307 (West 2008) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. See In re C.H., 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. In re N.R.T., 338 S.W.3d 667, 677 (Tex.App.—Amarillo 2011, no pet.).

The Department need not prove all nine Holley factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in

13

the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. See In re C.H., 89 S.W.3d at 27. No one Holley factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. In re A.P., 184 S.W.3d 410, 414 (Tex.App.—Dallas 2006, no pet.)

From the testimony heard by the trial court, it is apparent that the children desire to live with, and be adopted by, their aunt Clarissa and her significant other, Shawn. Both the children's current counselor and the previous counselor testified that they are not bonded to Arman but have become attached and are becoming bonded to Clarissa and Shawn. While there is evidence that the children love their father, as demonstrated by letters written to the trial court so expressing this sentiment, there is much countervailing evidence that the boys desire stability that is not available from Arman. This desire for stability appears to be one of the reasons for the attachment to and bonding with Clarissa and Shawn. Further, the sisters of these two children are already adopted by Clarissa. Accordingly, the desires of the children appear to weigh toward termination being in the best interest of the children.

Evidence regarding the emotional and physical needs of the children now and in the future made up most of the testimony heard. Likewise, in that same testimony, the subject of emotional and physical danger to the children was covered extensively. Accordingly, these two considerations will be viewed together. We begin with the observation that Arman's lack of involvement in the children's life in the past and his failure to protect the children in the past may well be a harbinger of things to come. See A.S. v. Tex. Dep't of Family & Protective Servs., 394 S.W.3d 703, 715 (Tex.App.—El

Paso 2012, no pet.) (citing <u>May v. May</u>, 829 S.W.2d 373, 377 (Tex.App.—Corpus Christi 1992, writ denied)). This factor weighs in favor of the best interest of the children being served by termination.

The parental abilities of Arman have been demonstrated to be virtually nonexistent. According to the record, at each opportunity to step forward as a parent, Arman has either returned the children to the mother or simply refused to accept his responsibility. Additionally, the evidence from the psychologist and his counselor clearly suggest that Arman can barely care for himself let alone care for the children. <u>See</u> <u>id</u>. Arman contends that he has improved and points to Court to his recent changes in housing and the completion of some of the parts of the parenting plan. While he is to be commended for improvement, this evidence does not mandate that we find that the best interest of the children would not be served by termination. <u>See</u> <u>In re J.W.M.</u>, 153 S.W.3d 541, 549 (Tex.App.—Amarillo 2004, pet. denied). Our view of the evidence is that Arman's lack of ability as a parent weighs heavily in favor of a finding that termination is in the best interest of the children.

The record clearly demonstrates that the Department has very specific plans for the children. These are to place the children for adoption with Clarissa and Shawn. Further, as discussed previously, the children support these plans. In juxtaposition, Arman is very unsure of his plans. This fact and the testimony of the children's Texas counselor that the children need to be with their sisters lend strong weight in favor of termination.

The only evidence before the trial court regarding the stability of the proposed adoptive home was that it was a very stable home and that Clarissa and Shawn were doing all the things necessary to bring stability and bonding into the children's lives. Additionally, there was significant testimony regarding the improvement of the children since they began living with Clarissa and Shawn. These facts weigh heavily in favor of the proposition that termination is in the best interest of the children.

As to the acts or omissions which might indicate that the parent-child relationship is not proper, these have been thoroughly discussed earlier in this opinion. Suffice it to say that these weigh heavily in favor of termination.

Arman's consistent theme throughout the trial was that it was the interference of the Department that caused him to have no real relationship with the children, more especially after the last referral. However, most of this evidence was conflicting, and it is up to the trier of fact to resolve those conflicts. See In re J.F.C., 96 S.W.3d at 266. In a legal sufficiency review, we view the evidence in the light most favorable to the fact-finder's finding. Id. In resolving the conflicting testimony we remember that, in reviewing the factual sufficiency of the evidence, we determine whether a reasonable fact-finder could have resolved the conflicting testimony in such a manner as necessary to support its finding; if so, then the evidence is factually sufficient. See In re C.H., 89 S.W.3d at 25. Accordingly, we find the evidence to weigh in favor of termination being in the best interest of the children.

In summation, when we look at the evidence as applied to the various Holley factors, we find that the best interest of the children is served by terminating the parent-

16

child relationship existing between the children and Arman.  Accordingly, Arman's issue to the contrary is overruled.

## Conclusion

Having overruled Arman's issues, we affirm the order terminating Arman's parental rights.


Mackey K. Hancock
Justice